[No. 4902. Decided September 21, 1904.]

OUDIN & BERGMAN FIRE CLAY MINING AND MANUFACTURING COMPANY, *Appellant,* v. GEORGE E. COLE, RECEIVER, *Respondent.*[1]

RECEIVERS—ALLOWANCE FOR ATTORNEYS' FEES. An allowance of $150 for services of a receiver's attorney is sustained by the evidence, where they extended over a considerable period, during which the receiver constantly sought advice and, from an examination of the record, the allowance seems reasonable.

1Reported in 77 Pac. 1066.

SAME—ALLOWANCE TO MANAGER.   Upon closing up a receiver-
ship an allowance of five dollars per day agreed to be paid to an
expert brick and pottery manufacturer, as superintendent of the
works, was proper, where it appears that his employment was
justified by the increased production under his supervision, and
that high wages were necessary.

Appeal from an order of the superior court of Spo-
kane county, Kennan, J., entered June 6, 1903, allowing
attorney's fees and other disbursements, after a hearing
upon a receiver's final account.   Affirmed.

*W. J. Thayer,* for appellant.

*P. F. Quinn,* for respondent.

PER CURIAM.—In the year 1900 Martin L. Bergman
and others, as plaintiffs, began an action against Charles
P. Oudin and others, as defendants, and asked, among
other things, for the appointment of a receiver over the
business and property of the appellant, a corporation.  Pur-
suant to the request the court appointed as such receiver
one A. P. Curry, who served until his death, which oc-
curred about June 1st, 1901.   On June 10, following, the
respondent, Geo. E. Cole, was appointed to succeed him.
Cole acted as receiver from that date until March 3, 1903,
when he was discharged by the court, after the termina-
tion of the action between Bergman and Oudin above men-
tioned.   In his final account as such receiver he showed
that he had employed Bergman from about May 15, 1902,
until the close of the receivership, as a sort of general man-
ager over the work of manufacturing pottery, at a salary
of $5 per day.   This item the court allowed at the hearing.
The court also allowed the receiver, for his services as such,
the sum of $1,000; and for his attorney, the sum of $150.
Exceptions were taken to the allowance of the items allowed
Bergman and the attorney, which exceptions the court

overruled, after a hearing had thereon. This appeal is from the order of allowance.

The first contention of the appellant is that the receiver maintained himself in office by a corrupt agreement with Bergman. It contends that the receiver employed Bergman at an exorbitant salary, in order to induce him not to settle his differences with Oudin so that the receivership, and his consequent appointment as receiver, might be prolonged indefinitely, and, for that reason, neither he nor Bergman ought to be allowed anything for their services. A further objection to the account of Bergman is that it is at least double the amount usually paid for like services. The objection to the claim of the attorney was that there was no evidence that he had performed any service.

Taking up the objections in the reverse order from that above stated, it appears that it was stipulated that the court should fix the amount to be allowed the attorney, without calling expert evidence as to the value of the services rendered; that the attorney thereupon made a general statement of the services he had rendered, and the court allowed the amount he claimed. It is true, this statement did not go into particulars, but the record of the receiver's doings was before the court, and was a proper matter to be examined in connection with the statement of the attorney. When these are examined, the allowance does not seem unreasonable. The services extended over a considerable period of time, and the receiver was in constant need of, and as constantly sought, the advice of his counsel.

The allowance to Bergman is supported by the receiver's statement to the effect that Bergman was an expert in the line of work that he was required to perform, and that the increased production of the plant when under his supervision more than justified his employment at the wages allowed him. The business in which the corporation was

engaged, that of manufacturing pottery, required a man as manager who was skilled in the business. Such men, the receiver states, were not plentiful, and the necessities of the occasion required the payment of high wages. On the whole record we think the court properly allowed this item.

On the question whether or not there was a corrupt agreement between the receiver and Bergman, we are content also to accept the conclusion of the trial court. While the evidence on the question was conflicting, we cannot say, after a careful perusal of the record, that the trial court did not decide in favor of its preponderance.

The judgment should be affirmed, and it is so ordered.